1

2

3

4

5

6           IN THE UNITED STATES DISTRICT COURT

7               FOR THE DISTRICT OF ARIZONA

8

9   Adeniran Richard Adeogba,          )   No. CV-05-2247 PHX-MHM (LOA)
                                       )
10          Petitioner,                )   **REPORT AND RECOMMENDATION**
                                       )
11  vs.                                )
                                       )
12  Immigration and Customs Enforcement, et)
    al.,                               )
13                                     )
            Respondents.               )
14  _____)

15          This matter arises on Petitioner's Petition for Writ of Habeas Corpus pursuant to 28

16  U.S.C. § 2241.[1] (document # 1) Respondents have filed a Response in Opposition to the

17  Petition.  (document # 10) to which Petitioner has replied. (document # 13) The Court also

18  ordered supplemental briefing  (document # 16) which the parties have filed.  (documents # 17,

19  # 18) Also before the Court is Petitioner's Motion to Amend to Add Parties (document # 11) to

20  which Respondents have replied.  (document # 21)

21                  **MOTION TO AMEND TO ADD PARTIES**

22          In his Motion to Amend to Add Parties (document # 11), Petitioner seeks to add as

23  Defendants David Kollus, Petitioner's custodian in Florence, Arizona; Michael Chertoff,

24  Secretary of the Department of Homeland Security; and Alberto Gonzales, United States

25

26  _____

27          [1]  The REAL ID Act of 2005 does not deprive this Court of jurisdiction because the Act was
    "not intended to 'preclude habeas review over challenges to detention that are independent of challenges
28  to removal orders.'" Hernandez v. Gonzales, 424 F.3d 42, 42-42 (1st Cir. 2005)(quoting
    H.R.Cong.Rep.No. 109-71, at 2873 (2005)).

1   Attorney General.  (document # 11)  Petitioner cites <u>Rumsfeld v. Padilla</u>, 542 U.S. 246 (2004)

2   in support of his motion.  In opposition to the Motion to Amend, Respondents claim that none

3   of the foregoing individuals is a proper respondent in this case.  <u>Rumsfeld</u> indicates that the

4   proper respondent in this case is the Immigration and Customs Enforcement ("ICE") Field

5   Office Director, Phillip Crawford, who has control over Petitioner's custody.  <u>Rumsfeld</u>, 542

6   U.S. at 435.  Petitioner has already named ICE as the Respondent in this matter.  Petitioner has

7   named the proper respondent in this matter, thus, there is no need for Petitioner to amend his

8   Petition to include the proper respondent.  Accordingly, the motion to amend should be denied.

9                                    **<u>BACKGROUND</u>**

10      Petitioner is a native and citizen of Nigeria who first entered the United States in 1979.

11   Petitioner, using the alias Ademuyiwa Oguntade-Oluwniyi, was ordered deported from the

12   United States on February 21, 1991 at El Paso, Texas.  On March 6, 1991, Petitioner was

13   physically removed from the United States under the name Ademuyiwa Oguntade-Oluwniyi.

14   Petitioner subsequently reentered the United States on March 24, 1991 without permission.

15      On June 2, 1995, Petitioner pleaded guilty to Theft with One Prior Felony in violation

16   of A.R.S. § 13-1802 and was sentenced to 7.5 years imprisonment.  (Respondents' Exh. 1)

17   Petitioner was committed to the Arizona Department of Corrections to serve his sentence.

18      On August 13, 2000, Petitioner was released from the ADOC and taken into the custody

19   of the Immigration and Naturalization Service (now the Department of Homeland Security[2]

20   ("DHS")) under the name Richard Adeniran Adeogba.  (Respondents' Exh. 2)  DHS instituted

21   administrative removal proceedings alleging that Petitioner was removable under 8 U.S.C. §

22   1228(b) which provides for expedited removal of an alien who is in the United States without

23   lawful residence and who has been convicted of an aggravated felony.  <u>Id.</u>   Petitioner was

24

25      [2] In March 1, 2003, the INS ceased to exist and its functions were transferred to the Department

26   of Homeland Security.  See Homeland Security Act of 2002, Pub.L.No. 107-295, 116 Stat. 2135.  The
     Court will refer to the agency as DHS because the proceedings in this case have continued after the

27   2003 transfer.

28                                         - 2 -

1  ordered removed as an aggravated felon based on his 1995 theft conviction under 8 U.S.C. §

2  1227(a)(2)(A)(iii).  (Respondents' Exh. 3) Before he could be removed, Petitioner requested

3  asylum asserting that he feared persecution upon return to Nigeria.  DHS granted Petitioner an

4  interview with a DHS asylum officer.  (Respondents' Exh. 4)

5         On December 22, 2000, the Asylum Officer found that Petitioner failed to establish a

6  "reasonable fear of persecution" or "torture" if he were returned to Nigeria.  (Id.)  Petitioner

7  requested that the Immigration Judge ("IJ") review the Asylum Officer's determination.

8  (Respondents' Exhs. 5, 6)   On January 12, 2001, the IJ affirmed the Asylum Officer's

9  determination that Petitioner failed to establish a reasonable fear of persecution if he were

10  removed to Nigeria.  (Respondents' Exh. 7)   The case was returned to DHS to remove

11  Petitioner.  (Respondents' Exh. 7)  DHS attempted to remove Petitioner pursuant to the final

12  order of removal.  However, on May 21, 2001, Petitioner filed a Petition for Review and Stay

13  of Removal with the Ninth Circuit Court of Appeals.  (Respondents' Exh. 7) On September 14,

14  2001, the Ninth Circuit dismissed Petitioner's petition because it lacked jurisdiction to consider

15  the case when Petitioner had been convicted of an aggravated felony.  (Respondents' Exh. 9)

16         DHS again attempted to remove Petitioner.  On December 30, 2001 and March 11, 2002,

17  the DHS requested travel documents from the Consul General of Nigeria.  (Respondents' Exhs.

18  9, 10)  On June 4, 2002, the Nigerian General Consul issued an "Emergency Travel Certificate"

19  to facilitate Petitioner's return to Nigeria.  However, the travel document was only valid for one

20  week commencing on June 4, 2002.  (Respondents' Exh. 11) In the meantime, on May 28, 2002,

21  Petitioner filed a second motion to stay his removal and petition for review with the Ninth

22  Circuit Court of Appeals.  (Respondents' Exh. 18)  On May 28, 2002, the Ninth Circuit granted

23  the stay of deportation pending review of the petition for review.  (Respondents' Exh. 18)

24  Because of the foregoing events, DHS could not remove Petitioner from the United States

25  pending resolution of the grant of stay and petition for review with the Ninth Circuit.

On February 20, 2003, the Ninth Circuit dismissed Petitioner's petition for review for failure to prosecute. (Respondents' Exh. 18) On March 19, 2003, DHS requested another travel document from the Consul General of Nigeria. (Respondents' Exh. 13)

On March 11, 2003, Petitioner filed his first Petition for Writ of Habeas Corpus in the United States District Court, District of Arizona, Adeogba v. INS, CV-03-481-PHX-MHM (LOA). On May 5, 2005, the district granted Petitioner's first petition for writ of habeas corpus and remanded the matter to the Board of Immigration Appeals for further consideration of Petitioner's claims for discretionary relief under § 212 of the INA, asylum, and for relief under the Convention Against Torture. (Respondents' Exh. 14; Adeogba v. INS, CV-03-481-PHX-MHM (LOA)(D.Ariz., May 5, 2005)(unpublished order)) The Court also granted Petitioner a stay of removal pending further proceedings before the BIA. (Id.)

On October 31, 2005, the Board of Immigration Appeals remanded the case to the Immigration Court for a ruling consistent with the District Court's Order. (Respondents' Exh. 15) On February 22, 2006, the Immigration Court denied Petitioner's application for asylum and withholding of removal, denied Petitioner's request for a waiver under § 212, and denied Petitioner's application for deferral of removal under Article III of the Convention Against Torture. (document # 15, Exh. 1) On or about March 14, 2006, Petitioner filed an appeal with the Board of Immigration Appeals ("BIA"). (document # 18, Exh. 1) That appeal is pending with the BIA.

In the meantime, on December 20, 2005, Petitioner filed the pending Petition for Writ of Habeas Corpus claiming that his current detention without bond for more than five years is unconstitutional. Petitioner contends that his detention is authorized by § 236 of the INA. Respondents assert that the Petition should be denied because Petitioner has not exhausted his administrative remedies. In the alternative, Respondents contend that the Petition fails on the merits.

## ANALYSIS

**I. Exhaustion**

Respondents assert that the Petition should be denied because Petitioner failed to exhaust administrative remedies.  Respondents assert that Petitioner must first exhaust administrative remedies under the INA before the federal court can review Petitioner's § 2241 petition.

Exhaustion of administrative remedies is only required if either the statute specifically requires exhaustion or it is called for by the administrative scheme.  McKart v. United States, 395 U.S. 185, 193 (1969).  Respondents argue that 8 U.S.C. § 1252(d)(1) requires Petitioner to exhaust administrative remedies before pursuing his § 2241 petition.  Section 1252(d) provides, in relevant part, that: "(d) Review of final orders.  A court may review a final order of removal only if  — (1) the alien has exhausted all administrative remedies available to the alien as of right. . . ."  Id.  In Sun v. Ashcroft, 370 F.3d 932 (9th Cir. 2004), the Ninth Circuit addressed whether § 1252(d)(1) requires exhaustion of administrative remedies before filing a § 2241 petition concerning a removal order.  Id. at 936.  The Court held "that § 1252(d)(1) imposes a statutory exhaustion requirement on immigration habeas petitioners."  Id.  at 939.  The Ninth Circuit then found that the petitioner in that case was required to exhaust administrative remedies with respect to his non-constitutional statutory argument that an alien originally admitted as a refugee should be able to request a waiver of inadmissibility under INA § 209(c).  Sun, 370 F.3d at 944.

Neither Sun's holding nor § 1252(d)(1) applies to this case.  Section 1252(d)(1) only applies to review of a final removal order.  In Sun, petitioner raised a statutory challenge to his removal order.  Unlike Sun, in the pending § 2241 Petition, Petitioner does not challenge his removal order.  Rather, he raises a constitutional challenge to his continued detention under § 1226(c).  There is no specific statutory language requiring Petitioner to exhaust his administrative remedies as to his constitutional claim.  "Where Congress has not clearly required exhaustion, sound judicial discretion governs."  McCarthy v. Madigan, 503 U.S. 140, 144 (1992).  The court should require exhaustion if "reviewing the petition would interrupt the administrative review process and if Petitioner could seek relief through these means . . . ."  Duong v. Immigration and Naturalization Service, 118 F.Supp.2d 1059, 1063 (S.D.Cal. 2000).

- 5 -

1  The Immigration Court lacks jurisdiction over Petitioner's constitutional challenge to his

2  detention under § 1226(c). Wang v. Reno, 81 F.3d 808 (9th Cir. 1996)(holding that an alien was

3  not required to exhaust his administrative remedies before seeking judicial review of his due

4  process claim because that claim fell outside the scope of the Immigration and Nationality Act);

5  Van Eeton v. Beebe, 49 F.Supp.2d 1186, 1189 (D. Oregon 1999)(holding that an alien detained

6  pending removal proceedings was not required to exhaust administrative remedies before

7  bringing federal habeas petition challenging denial of bail on due process grounds). There is

8  no administrative proceeding to address Petitioner's claim that his continued detention violates

9  the Constitution. Duong, 118 F.Supp.2d at 1064. In view of the foregoing, the Court will not

10  require that Petitioner exhaust his administrative remedies before pursuing his claim that his

11  continued detention is unconstitutional. **II.  Merits of Petitioner's Claim**

12      Petitioner has been detained by DHS since August of 2000. In 2001, Petitioner was

13  ordered removed to Nigeria as an aggravated felon.  However, before he could be removed,

14  Petitioner filed an application for asylum and for relief from removal. Petitioner's request for

15  relief was denied by the IJ and the BIA and the case was returned to the DHS to remove

16  Petitioner. On May 21, 2001, Petitioner filed a petition for review and request for stay with the

17  Ninth Circuit. On September 14, 2001, the Ninth Circuit dismissed the petition. DHS again

18  attempted to remove Petitioner and obtained travel documents on two separate occasions.

19  Before DHS could remove Petitioner, he filed a second motion for review and for a stay of

20  removal with the Ninth Circuit. On June 5, 2002, the Ninth Circuit granted the stay. On

21  February 20, 2003, the Ninth Circuit dismissed the petition for review.  Thereafter, on March

22  11, 2003, Petitioner filed his first petition for writ of habeas corpus with this court challenging

23  the denial of relief from removal. Adeogba v. INS, No. CV-03-481-PHX-MHM (LOA).  On

24  May 5, 2005, the district court granted the petition and remanded this matter to the BIA for

25  further consideration of Petitioner's claims for discretionary relief under § 212 of the INA,

26  asylum, and for relief under the Convention Against Torture. Id.  The district court stayed

27  Petitioner's removal pending remand of this matter to the BIA.

28

On October 31, 2005, the BIA remanded Petitioner's case to the Immigration Court. On February 22, 2006, the Immigration Judge denied Petitioner relief.   Thereafter, on March 14, 2006, Petitioner appealed to the BIA.   Because Petitioner's removal order is presently on appeal to the BIA and this Court has ordered a stay of removal, the removal period has not commenced and Petitioner's current detention is authorized by INA § 236(c), 8 U.S.C. § 1226(c). See, 8 U.S.C. § 1231(a)(1)(B)(stating that "the removal period begins on the latest of the following: (i) The date the order of removal becomes administratively final. (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order). See also, Armijo v. Gonzales, No. CV-05-1055-NVW (MEA), 2005 WL 2897520 (D. Ariz., Nov. 1, 2005).

## A.  Application of Zadvydas v. Davis, 533 U.S. 678 (2001)

Petitioner claims that his detention pending removal proceeding violates the Supreme Court's pronouncement in Zadvydas v. Davis, 533 U.S. 678 (2001).  When an alien is found removable and a final order of removal has been entered, the Attorney General ordinarily secures removal of that alien during a 90-day statutory "removal period" during which the alien is detained.  8 U.S.C. § 1231(a)(1)(A)-(B).  In Zadvydas v. Davis, 533 U.S. 678, 687 (2001), the Supreme Court held that the post-removal-period detention provision, 8 U.S.C. § 1231(a)(6), implicitly limits an alien's detention to a "period reasonably necessary to bring about that alien's removal" and does not permit indefinite detention.  Id. at 689.  The Due Process Clause applies to aliens who have entered the United States, and the Court found that a "statute permitting indefinite detention of an alien would raise a serious constitutional problem."  Id. at 690.  The Zadvydas Court held that six months is a presumptively reasonable period of post-removal-period detention.  Id.  at 701.  The Court then established a guideline to assist habeas courts in determining whether a period of post-removal-period detention in excess of six months is permissible.  First, the alien must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  533 U.S. at 701.  If the alien meets this burden, "the Government must respond with evidence sufficient to rebut that showing."  Id.

1  "[F]or detention to remain reasonable, as the period of prior post-removal confinement grows,

2  what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id. at 701.

3  The Court clarified that under its holding "an alien may be held in confinement until it has been

4  determined that there is no significant likelihood of removal in the reasonably foreseeable

5  future." Id.

6      In Zadvydas, the Court emphasized that its due process analysis applies to detention after

7  the removal period has expired. Id. at 682-83.  In framing the issue in Zadvydas, the Court

8  stated that "[w]e must decide whether this post-removal-period statute [§ 1231(a)(6)(1)]

9  authorizes the Attorney General to detain a removable alien indefinitely beyond the removal

10  period or only for a period reasonably necessary to secure the alien's removal . . . ." Id. at 682-

11  83.  The removal period commences on the latest of the following: (i) The date the order of

12  removal becomes administratively final. (ii) If the removal order is judicially reviewed and if

13  a court orders a stay of the removal of the alien, the date of the court's final order.  8 U.S.C. §

14  1231(a)(1)(B).

15      Here, the removal period has not commenced.  Thus, Zadvydas does not apply to

16  Petitioner's current detention.  Rather, Petitioner's is currently detained pursuant to INA § 236,

17  8 U.S.C. § 1226(c) and his detention is governed by the Supreme Court's decision in Demore

18  v. Kim, 538 U.S. 510 (2003).  Armijo v. Gonzales, No. CV-05-1055-PHX-NVW (MEA), 2005

19  WL 2897520, * 3 (D.Ariz., November 1, 2005)(noting that petitioner's order of removal was

20  not final because Immigration Judge's decision finding petitioner ineligible for cancellation of

21  removal was still on appeal before the BIA.  Therefore, petitioner was being detained pursuant

22  to INA § 236(c), 8 U.S.C. § 1226(c)).

23      **2.  Demore v. Kim, 538 U.S. 510 (2003)**

24      As previously stated, Petitioner is removable as an alien convicted of an aggravated

25  felony and is not a lawful permanent resident.  Regardless, the Due Process Clause protects

26  Petitioner from prolonged detention.  Demore, 538 U.S. at 523.  See also Fuller v. Gonzales,

27

28                                          - 8 -

1  No. Civ. A. 3:04CV2039SRU, 2005 WL 818614, * 3 (D.Conn. April 5, 2005); Oyedeji v.

2  Ashcroft, 332 F.Supp.2d 747, 753 (M.D.Pa. 2004).

3       In Demore v Kim, 538 U.S. 510, 523 (2003), the Supreme Court approved the mandatory

4  detention of criminal aliens during removal proceedings  under 8 U.S.C. § 1226(c) even in the

5  absence of an individualized finding that the alien was unlikely to appear for his removal

6  hearing if released on bond.   Specifically, the Court held that the government could detain

7  aliens who had been convicted of a crime for "the *brief* period necessary for their removal

8  proceedings."   Id. at 513. (emphasis added)    The Court in Demore discussed the data

9  concerning the length of detention and noted that detention under § 1226(c) lasts approximately

10 a month and a half in most cases, and about five months in cases where the alien appeals.  Id.

11 at 530.

12      In Demore, petitioner had been detained for over six months which the Court stated was

13 "somewhat longer than average."   Id. at 530-31.   However, the Court considered that

14 "temporary" confinement permissible. Id.  "Demore endorses the general proposition of "brief"

15 detentions, with a specific holding of a six-month period as presumptively reasonable."

16 Nadarajah v. Gonzales, No. 05-56759, 2006 WL 686385, * 10 (9th Cir., March 17,

17 2006)(holding that a five-year period of confinement of an alien who had not been charged with

18 any crime, and who had won relief from removal at every administrative level, was

19 unreasonable under the standards articulated by the Supreme Court.).

20      Unlike Demore, Petitioner has been detained for over five years, not six months.  The

21 Ninth Circuit has held that "[a] detention of nearly five years — ten times the amount of time the

22 Supreme Court has considered acceptable absent a special showing — is plainly unreasonable

23 under any measure." Nadarajah, 2006 WL 686385, * 11.  In so holding, the Ninth Circuit noted

24 that Demore authorized a "brief period" of confinement pending removal proceedings but that

25 nothing in Demore indicates that the "Court would countenance an indefinite detention."  Id.

26      Petitioner's detention which has lasted over five years cannot be considered a "brief" or

27 temporary period that would be considered reasonable under Demore.  In Tijani v. Willis, 430

28

F.3d 1241 (9th Cir. 2005), the Ninth Circuit held that an alien was entitled to release on bail after being detained for nearly three years during removal proceedings, either because detention for such a period was not expeditious, and therefore did not conform to the Immigration and Nationality Act's (INA) mandatory detention provision, or because detention for such a period violated the alien's due process rights. Id. In so holding, the Ninth Circuit noted that Tijani's case was distinct from Demore, where the alien conceded deportability. Id. at 1242. In Tijani, petitioner was being detained while he continued to litigate whether his offenses actually fell within the reach of the mandatory detention statute. Id. at 1244. Tashima, J., concurring, found that petitioner "almost certainly had a winning argument that he is not removable for having committed an aggravated felony." Id. at 1247.

The Tijani court found that "the authority conferred by § 1226(c) . . . appl[ies] to expedited removal of criminal aliens." Id. at 1242. The court held that "[t]wo years and eight months of process is not expeditious; and the foreseeable process in this case . . . is a year or more." Id. The Ninth Circuit remanded the matter "to the district court with directions to grant the writ unless the government within 60 days provides a hearing to [petitioner] before an Immigration Judge with the power to grant him bail unless the government establishes that he is a flight risk or will be a danger to the community." Id. (citing Cooper v. Oklahoma, 517 U.S. 348, 363 (1996)).

Unlike Tijani, Petitioner neither challenges his removability as an aggravated felon nor challenges the characterization of his offenses as aggravated felonies. Rather, Petitioner claims that he is entitled to relief from removal under the Convention Against Torture, asylum, or relief from removal. Although Petitioner concedes his removability based on having been convicted of an aggravated felony, this Court cannot ignore the fact that Petitioner's detention has exceeded five years. The Supreme Court has approved mandatory detention during removal proceedings which lasts for a relatively brief period, usually less than 90 days. Demore, 538 U.S. 529. In Demore, the Court held that detention incidental to removal must bear a reasonable relation to its purpose. Demore, 538 U.S. at 527. The Demore court found that detention during removal

1   proceedings was "reasonably related" to the goal of preventing flight both because the alien was

2   unquestionably removable, and thus presented a high flight risk, and the time period was lasting

3   on average for a mere 47 days.  Demore, 538 U.S. at 527-29.

4        Here, Petitioner is unquestionably removable as an alien convicted of an aggravated

5   felony.  (Adeogba v. INS, No. CV-03-481-PHX-MHM (LOA), document # 54, May 5, 2005

6   Order (unpublished)(stating that it is "undisputed" that Petitioner's conviction and sentence

7   qualify as an aggravated felony under 8 U.S.C. § 1101(a)(43)).  However, Petitioner's detention

8   has lasted over ten times the 6-month period approved in Demore.  In Demore, Justice Kennedy,

9   concurring, noted that there is a point at which the length of detention becomes so unreasonable

10  that it can no longer be considered to be "reasonably related" to an alien's removal."  Id. at 532.

11  See Ly v. Hansen, 351 F.3d 263, 272 (6th Cir. 2004)(finding detention for 1 ½ years

12  unreasonable); Fuller, 2005 WL 818614, * 6 (finding two-year detention under § 236(c)

13  unconstitutional).

14       In Demore, the Supreme Court affirmed the detention of a criminal alien for "the limited

15  period [six months] of his removal proceedings." 538 U.S. at 531.  Unlike petitioner in Demore,

16  Petitioner in this case has been detained over 60 months which cannot be characterized as a

17  "brief" or "limited period" which the Demore Court found acceptable.  Id.  Petitioner's five-year

18  detention is more than 40 times the average length of detention (1 ½ months) under § 1226(c)

19  and 12 times the average when an alien chooses to appeal (five months),  and it is more than 10

20  times as long as the six months that the Supreme Court suggested would be reasonable in

21  Demore.  538 U.S. at 530.  Petitioner's detention pending removal proceedings far exceeds that

22  contemplated in Demore.

23       It is true that Petitioner has sought judicial review and a stay of removal which has

24  contributed to the length of his detention.  Indeed, Petitoner could secure his release by asking

25  the Court to lift the stay of removal, thereby permitting DHS to execute his final order of

26  removal.  However, such a choice is untenable for Petitioner who claims that he would be

27  exposed to an extreme risk of harm if removed to Nigeria.  Lawson v. Gerlinski, 332 F.Supp.2d

28

735, 745 (M.D.Pa. 2004)(rejecting INS' argument that petitioner's continued detention was not indefinite because he held the "keys to his cell" in view of the stay of removal which petitioner had requested.); but see Singh v. Gonzales, No. C05-1686-JLR-JPD, 2006 WL 1041838, * 4 (W.D.Wash., April 3, 2006)(denying § 2241 petition challenging detention pending removal finding that petitioner's detention was a result of a stay of removal he had requested.). ""The price for securing a stay of removal should not be prolonged incarceration." Id.; Oyedeji, 332 F.Supp.2d at 753 (noting that "prolonged incarceration for an alien whose potentially meritorious challenge to removal is part of a congested docket is indistinguishable from lengthy incarceration because the alien's native country refuses to issue travel documents."). Petitioner "should not be effectively punished for pursuing applicable legal remedies." Lawson, 332 F.Supp.2d at 746. Although Petitioner is responsible for seeking further relief, "he is not responsible for the amount of time that such determinations may take." Ly, 351 F.3d at 272.

Where detention becomes prolonged, "special care must be exercised so that the confinement does not continue beyond the time when the original justifications for custody are no longer tenable." Ngo v. INS, 192 F.3d 390, 398 (3rd Cir. 1999). The record in this case reveals little about the review of Petitioner's custody status since he was taken into INS custody in 2000. It appears that Petitioner's continued detention has not been considered.

The District Court has found that Petitioner's requests for relief under § 212(h), asylum, and for relief under the Convention Against Torture have merit. Petitioner continues to pursue non-frivolous claims based on a risk of substantial harm should he be removed to Nigeria. Under the circumstances of this case, Petitioner's continued detention under § 236(c) runs afoul of the Constitution.

Accordingly,

IT IS HEREBY RECOMMENDED that Petitioner's Motion to Amend to Add Parties (document # 11) be **DENIED.**

IT IS FURTHER RECOMMENDED that Petitioner's Petition for Writ of Habeas Corpus (document # 1) be **GRANTED** unless within 60 days of the District Court's ruling on the Report

and Recommendation Respondents provide Petitioner with a bond hearing before an Immigration Judge with the power to grant Petitioner bail.

IT IS FURTHER RECOMMENDED that Respondents be ordered to file a status report every thirty days until Petitioner is granted a bond hearing.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See,* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have ten days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna- Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

DATED this 23rd day of May, 2006.


Lawrence O. Anderson
United States Magistrate Judge

- 13 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 14 -